**Date signed December 01, 2004**



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| GLOBAL SYSTEMS & STRATEGIES, INC.: | | Case No. 04-12045PM |
| | : | Chapter 11 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : | | |

### MEMORANDUM OF DECISION

     LeClair Ryan, a Professional Corporation, filed an Application for final compensation and reimbursement of expenses for services rendered the Debtor in the period January 28, 2004, through July 15, 2004 (the "Application").  It seeks compensation in the sum of $86,641.50, and reimbursement of out-of-pocket expenses of $2,367.03.  Objections to the Application were filed on behalf of Joseph and Nancy Pecar (the "Pecars"), creditors of this estate.  A tardy request for a continuance made by an officer of the Debtor was denied.  A hearing took place on November 24, 2004, at which time the court heard argument of the applicant and the attorney for the Pecars.

     This bankruptcy case was filed at 4:02 p.m. on January 28, 2004.  A hearing had been scheduled in the Circuit Court for Montgomery County, Maryland, on the following day on an action seeking the entry of judgment on an arbitration award and the opposition thereto.

     While the issues presented to this court in this corporate reorganization are the type of issues one ordinarily anticipates in a small business Chapter 11 case, this case presents extreme difficulty because of the personalities involved.  The Pecars are the parents of Jean M. Tolbert, the president of the Debtor.  Steven Tolbert is their son-in-law, originally hired in 1992 as a systems engineer.  As a result of certain action taken by Mr. Tolbert, litigation ensued in the Circuit Court for Montgomery County.  At the suggestion of the trial judge, the late Judge James

Chapin of that court, the parties agreed to enter into binding arbitration by Leonard Sloan of the District of Columbia. While the arbitration resulted in a settlement, that was not the end of the matter. The parties returned to Mr. Sloan for further arbitration. As a part of the original agreements, besides a buyout of the Pecars' interests, the Debtor agreed to provide the Pecars with continuing health benefits, all as more fully described in an injunction proceeding entitled *Joseph Pecar and Nancy Pecar v. Global Systems & Strategies, Inc.*, Adversary Proceeding No. 04-1454, filed April 20, 2004. A Temporary Restraining Order was issued on May 11, 2004, and a Consent Order granting a Preliminary Injunction was entered the following day. A final pre-trial conference is set for December 7, 2004.

Some measure of the heat generated between the principals of the Debtor is described in the Pecars' opposition where they point out that over $46,000.00 of the fees sought in this case relate to this internecine controversy. The court suspects that it has been a long time since the Pecars have spent any time with their grandchildren. In their opposition they suggest that LeClair Ryan is responsible in part for throwing fuel on the fire and that counsel should be held responsible for not bringing this dispute to an end and caving in to their demands. As noted further on in this Opinion, this is in some respects accurate. In crafting this Memorandum, the court finds it very difficult to escape from the fact that this is an intra-family dispute as distinguished from the ordinarily two-dimensional world of bankruptcy where every issue can be solved by the application of money.

The Rule for decision in this case is found in § 330(a)(1)(A) of the Bankruptcy Code that provides:

> **11 U.S.C. § 330. Compensation of officers**
>
> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103--
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person.

In a nutshell, the court must look to how the estate was benefitted by the services of counsel, operating always with the clear vision of hindsight. At the same time, counsel is not a guarantor of the success of a debtor's plan. Viewed in the cold, gray light of dawn, the Pecars' claim may not be distinguished from any other and is no different from any other unsecured

claim in this case, other than the fact that they assert some undescribed priority for the sums due as a result of the breach of the settlement agreement among the parties.

The court will review the Application.

**Financing** - $550,000.00.[1]  Counsel states that nearly 20 hours was spent in negotiating and completing a cash collateral agreement with its secured lender, Citizens Bank of Pennsylvania, that filed an undersecured claim in the total amount of $227,171.36.  Repayment of the loan is guaranteed by the Tolberts.  The court finds that the time invested in this endeavor seems slightly excessive in view of the amount involved and the fact that there is nothing unusual about the motion for use of cash collateral filed by Debtor.  More likely than not, the bulk of the work in drafting was done Citizens Bank.

**Case Administration and Objections** - Here, $15,285.00 is requested for some 68 hours in time.  The amount of time applied to this particular facet of the work also appears to be more than required.  What makes this also difficult is that a considerable amount of time for the financing issues are included.  Likewise, it seems hard to find any benefit to the bankruptcy estate for researching the issue of indemnification to the Tolberts for their legal fees.

**Relief from Stay** - $1,190.00.  This item should be augmented by some time devoted in the earlier section to this issue.  The court cannot see any benefit to the estate obtained from the opposition to this motion.  In any event, confirmation of the arbitration award had no impact on this bankruptcy case.  This debt would be subsumed in the proof of claim filed on behalf of the Pecars.  Under established Fourth Circuit precedent, the arbitration proceeding controls.  By submitting a Consent Order, Debtor's counsel would assure that it would able to lodge such legal objections as would be appropriate.

**Creditor Meeting** - $1,380.00.  This entry appears appropriate in all respects.

**Pecar Litigation** - $44,924.00.  It is clear to the court that, judging from the timing alone of the filing of this bankruptcy case, dealing with the Pecar claim was the driving force behind the filing.  The court is somewhat handicapped in reviewing this aspect of the Application in that a considerable amount of the work involved actions in the state court.  There is some overlap with the lift stay issue described earlier.  There is also an entry for drafting a motion to employ

---

[1] At the hearing on the Application, the applicant acknowledged a duplication of time in some items and a overstatement of the hourly rate by a small amount.  Counsel summarized this as a voluntary reduction of $3,686.50 in the amount sought.

special counsel, but the court does not see where special counsel was ever employed in this case. The court also finds that an extraordinary amount of time was involved in preparing and filing the complaint for an injunction, more than one would anticipate. In addition, there is included in this section in time said to be devoted to revising the Plan and Disclosure Statement. The court believes that there should be some adjustment downward with respect to this aspect of the fee Application, but as stated, minimizing the Pecars' claim appears to be the cornerstone of this bankruptcy filing. Considering the vigorous opposition in place, the court is not surprised by the amount of time invested by counsel for the Debtor.

**Claims Administration and Objections** - $712.50. Here, the only questionable item deals with the indemnification issues described above.

**Plan and Disclosure Statement** - $17,600.00. Before the hearing on the Disclosure Statement, the employment of new counsel was authorized. New counsel thereupon filed a praecipe withdrawing the Disclosure Statement "in order to resolve the objections and submit a revised Disclosure Statement that satisfies the meritorious objections." There were three objections to the Disclosure Statement filed. One on behalf of the Pecars, a second on behalf of the Citizens Bank of Pennsylvania, and a third by the United States Trustee. The last objection offered no reason not to approve the Disclosure Statement and will be ignored. The Citizens Bank objection points out various inadequacies in the Statement, particularly with respect to the treatment of its allowed secured claim and the forthcoming maturity of its note, as well as the fact that the Debtor's principals have guaranteed the claim. It goes on to point out that the amount of allowed claims in each class is not disclosed, nor is there the liquidation analysis required. There was an absence of projections or other *pro forma* statements, as well as a statement of the collectibility of Debtor's accounts receivable or the projected value that could be obtained from avoidable transfers. Further, there was no estimate of the administrative expenses incurred.

The Pecars objection duplicated some of the objections of Citizens Bank and noted the absence of definitions of various terms used in the Plan. Similarly, the Pecars objection took issue, quite properly, with the description of the arbitration process as well the failure to describe the claims against the Pecars that are mentioned in the Disclosure Statement. Despite the fact that there are numerous creditors listed as disputed, the Debtor neither described this fact nor sent the required notice under Local Bankruptcy Rule 2081-1 to such creditors. Paragraph 10.5 of the

Plan itself purports to release the Debtor's officers, directors and professionals from any and all claims provided for under the Plan.  The court assumes this subterfuge was designed to eliminate the personal liability of the Talberts to Citizens Bank.  It is not surprising that successor counsel saw the outcome of the hearing on approval of the Disclosure Statement and, indeed, of the confirmation of the Plan itself and therefore withdrew the Disclosure Statement.

Finally, it seems improbable that the Plan would succeed with the Tolberts retaining all equity in the corporation in exchange for $20,000.00 and the waiver of claims against the estate.  Such a plan was predestined for failure, having been proposed during the 120 exclusive period.  *See Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 454-58 (1999).  The court finds it very difficult to ascribe much benefit to the estate from this endeavor.

This bankruptcy case presents a difficult situation for any counsel for the Debtor.  The court suspects, with the benefit of hindsight, LeClair Ryan, faced with this prospective client, would show it the door.

In conclusion, the court finds that the time and labor required for the tasks presented were less than the time for which Applicant billed.  The bankruptcy aspects of this case required an experienced Chapter 11 practitioner.  The personal aspects of this case presented the extreme difficulty confronted.  Counsel was not precluded from other employment because of this case.  Counsel is entitled to the customary fee that it charges for similar representation.  The only time limitations involved those around the first days of the case when it was necessary to file what are termed "first day" motions.  As for the results obtained by this bankruptcy case, other than some preliminary negotiations with the secured creditor, it appears that this case is no further along now than it was shortly after the case was filed.  LeClair Ryan is an experienced bankruptcy firm operating primarily in the Eastern District of Virginia.  The attorneys who appeared on its behalf are able.  This appears to be the first and last professional relationship that it has with the Debtor, whose principals appear as dissatisfied with it as they were with prior counsel, Jackson and Campbell.

The court has examined the out-of-pocket expenses requested and finds them reasonable.  An appropriate order will be entered.

cc:
Jean M. Tolbert, Global Systems & Strategies, Inc.,
      13512 Hunting Hill Way, Gaithersburg, MD 20878
John Garza, Esq., 17 West Jefferson Street, Suite 200, Rockville, MD 20850
Jeffrey M. Orenstein, Esq., 11300 Rockville Pike, Suite 408, Rockville, MD 20852
Philip J. McNutt, Esq., 1667 K Street, N.W., Washington, DC 20006
Stephen K. Gallagher, Esq., LeClair Ryan PC, 225 Reinekers Lane, #290, Alexandria VA 22314
United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770

**End of Memorandum**