Date signed November 17, 2005



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| GLOBAL SYSTEMS & STRATEGIES, INC. | : | Case No. 04-12045PM |
| | : | Chapter 11 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

Before the court is the First Application of Richard H. Gins, the fourth in a succession of lawyers for the Debtor, for compensation for services rendered for the period January 14, 2005, through June 14, 2005 (the "Application"). The Application is opposed by Joseph and Nancy Pecar (the "Pecars"). The matter came on for hearing before the court on November 15, 2005, at which time the court heard testimony of the Debtor's principal and from Mr. Joseph Pecar.

The real adversaries in this case are the Pecars, who are the parents of Jean Tolbert and who sold this business to Ms. Tolbert and her husband. At this time, no other creditor expresses any interest in this case. Seldom in the court's experience has it seen such an outpouring of vitriol from creditors as found in this case. The court has only seen a part of the cause of this internecine war that has gone on for many years. There was prior litigation in state court, and, with the help of a mediator, entered into a settlement. This settlement blew apart when the Debtor stopped payments on the buyout agreement and ceased making medical insurance payments as required under that agreement. The court understands that the relationship of the grandparents to their grandchildren has likewise suffered. Efforts by Magistrate Judge Connelly to effect mediation were likewise unsuccessful. The court is of the firm opinion that the bad feelings between the parties will not be expunged in their lifetimes.

The creditors have engaged in a very aggressive discovery program. The court senses that far more discovery was undertaken than is necessary in a case of this nature. Nonetheless, these creditors have a right to proceed and go over points numerous times in the absence of any motion for a protective order.

The court will review this Application under the standards set forth in such cases as *Harmon v. Levin*, 772 F.2d 1150 (CA4 1995), and *In re Courtois*, 222 B.R. 491 (BC Md. 1998). These cases direct the court to consider the *Johnson* factors originally found in the case of *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (CA5 1974), and introduced into the jurisprudence of the Fourth Circuit by *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (CA4 1978). These factors are as follows:

1. <u>Time and labor expended</u>. The court has examined the Application and finds, to the extent that it can do so, that Counsel has invested the time in this case, some 110.9 hours said to be spent. During the applicable period covered by the Application, Counsel first had to bring himself up to speed and consider the matters covered by the 140 docket entries in this case prior to beginning of activity by him. Throughout this period, the court believes that Counsel made every effort to dispose of this very difficult case. He dealt with the injunction and attempted to satisfy the Pecars' discovery requests. The mediation effort required a review of the prior settlement and preparation for the mediation itself. Counsel prepared a Plan and Disclosure Statement, dealt with a hearing for the Motion for Appointment of a Trustee, and revised the Disclosure Statement.

2. <u>Novelty and difficulty of questions raised</u>. This is a very difficult case for all parties involved, whether the principals, their attorneys or the court. As stated above, the court has seldom experienced such bitterness as exhibited in this case.

3. <u>Skill required to properly perform legal services required</u>. This case requires an experienced lawyer in bankruptcy, but, even more so, it calls for the exercise of a keen sense of judgment and interpersonal relations.

4. <u>Preclusion of other employment</u>. This factor is not applicable, other than the observation that time spent on this case could not be devoted to other clients.

5. <u>Customary fee for like work</u>. Counsel charges $350.00 an hour. This is well within the range of fees charged in this District for cases of a similar nature by attorneys with similar experience.

6. <u>Whether fee is fixed or contingent</u>.  While the fee is on an hourly basis, as with any representation of a debtor, there is a degree of contingency in that the debtor may be unable to make the payment or the court may not allow the fee sought.

7. <u>Time limitations imposed</u>.  The court does not believe that there were any extreme time limitations imposed in this case.

8. <u>Amount in controversy and results obtaineed</u>.  There are more than $1-1/2 million in claims that were filed.  The survival of this business is dependent upon a successful outcome of this case.  It is too soon to appraise fully the results obtained, although the "defensive end" of work done by Counsel has kept this case on the track to a possible successful outcome under a Plan ultimately proposed by the Examiner appointed by the Office of the United States Trustee.

9. <u>The experience, reputation and ability of attorney</u>.  Counsel has served as a panel trustee and has more than 34 years of experience of practice in this court.  Counsel is well suited to handle a case of this nature.

10. <u>Undesirability of Case</u>.  Considering the animosities involved, and the court assumes that it goes both ways, this cannot be a very pleasant experience for either counsel.

11. <u>Nature and length of professional relationship with client</u>.  This factor has no applicability.

12. <u>Attorney fee awards in similar cases</u>.  In similar cases, the court has allowed reasonable compensation to counsel for the debtor.

There is one additional factor that affects the court's disposition of this Application.  This factor often comes up in small business cases such as the one at hand where the principals of the corporation look to counsel for the corporation for advice and representation.  To the extent that this can be avoided, it should be.  As noted in such cases as *In re Southern Kitchens, Inc.* 216 B.R. 819 (BC Minn. 1998), and *In re Mican Homes, Inc.*, 179 B.R. 886 (BC E.D. Mo. 1995), the simultaneous representation of the debtor and the debtor's principals gives rise to a conflict of interest.  In countless legal seminars, the court has heard discussions of the burden on small debtors to handle the expense of multiple counsel.  Indeed, this is often beyond the understanding of the corporate principals.  Nonetheless, it was inappropriate for Mr. Gins to represent the Debtor and its principal in a Rule 2004 examination.  As a result, Counsel made representations or promises on behalf of a party he did not represent, and this thrown further fuel on the fire.  While the court does not believe that Counsel should be disqualified for this, the court finds it

inappropriate to allow compensation for this work.

An appropriate order will be entered.

cc:
Richard H. Gins, Esq., 3 Bethesda Metro, Suite 530, Bethesda, MD 20814
Philip J. McNutt, Esq., Hughes & Bentzen, 1667 K Street, N.W. Washington, DC 20006
United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770
James Vidmar, Examiner, Linowes & Blocher,
    7200 Wisconsin Avenue, #800, Bethesda, MD 20814
Janet M. Nesse, Esq., Stinson Morrison & Hecker,
    1150 18th Street, N.W., #800, Washington, DC 20036

**End of Memorandum**